Proceed and before we start I want to once again thank and welcome Judge Chigares and I certainly appreciate Judge Jane Restaino who serves on the Court of International Trade out of New York City being with us this morning and helping us out. Thank you very much. Okay let's start with the first case the Naples v. Commissioner of Internal Revenue. Mr. Horwitz. May it please the name is Alan Horwitz. I'm representing the appellants to the Naples. I'd like to reserve two minutes for rebuttal. Very well. This appeal presents two distinct issues. One is a broader issue involving the interpretation of Section 103 of the Internal Revenue Code and then a second narrow issue of whether the tax court erred when it issued a decision that did not support findings in its opinion. Just to briefly give the background of how these issues arise. State of Pennsylvania needed appellants land to build a highway. They wanted to commence work on the highway as soon as possible so even though there was no agreement between the parties on what the value of the land was and what just compensation should be they entered onto the land and began work and ultimately the compensation dispute went to litigation. Several years later in the midst of a jury trial the parties agreed to settle and they settled for a just compensation amount of 40.9 million dollars that was in total settlement of the just compensation claims. And so the second issue the issue that I'll talk about second comes out of that deals with the tax treatment of that 40.9 million dollars. Well before you I appreciate your brevity but they they had a memorandum of settlement first. Right. Right. Which broke it all out and then they eventually they they entered into a regular settlement agreement with a that matters. Right. Well yes. If you're referring to the allocation between principle and interest. Yes. Yes. The memorandum of understanding had figures in it that that did allocate between principle and interest. Could you give us a rationale for the allocation. Well it's not really in the record. It's been it's indicated in the briefs that it was that there was a state that inserted this. Also let me make sure I understand your question is why the allocation matters for tax purposes or why the state put this out for any purposes. I just couldn't figure out why the allocation was it something like 24 million and 16 and 16. Right. And when I when you read that you said why did they do that. And I don't know if it's relevant or not. Maybe you can tell me just as. All right. Well then two answers I guess why they did it is our understanding as the state put it in because their interest payments that they make that are characterized or interest kind of come out of a different pot. And I think it's a pot that they have easier access to. In other words money is already appropriated to pay interest because that's kind of an obligation of the state. Whereas the principal value was something that the state was going to need an appropriation for was more of a discretionary item. So we think that's why it was put in now for purposes. Now the IRS needs to know what the what the allocation is. Even if there was no allocation ever adopted to be two parts. I mean right. Obviously there was a delay. Absolutely. There has to be two parts. No question. There's two parts. But the memorandum of understanding was I guess superseded by the subsequent settlement agreement. That'd be accurate. Well I think that's accurate. The settlement agreement didn't say anything about the allocation. So the only allocation that was ever talked about by the parties was the one in the memorandum of understanding. That was not binding on the IRS anyway. Whether there'd been an allocation or not the IRS was free to change that. I mean certainly if the appellants had filed their tax returns and claimed that the entire 40 million was principal the IRS would have gone ballistic on that because that's a more favorable tax treatment and they would have said what Judge Rastani just said. Clearly some component of it is interest. So so the IRS was open to the IRS to challenge the allocation. I mean as it as it developed the this allocation was put in the memorandum of understanding was just used by the appellants and their tax return. That's what they used. The IRS used it in their deficiency notices and that was just kind of the allocation that everyone was going by until the tax court issued its opinion in which the tax court said the allocation is inaccurate. And that I guess I've gotten reversed a little bit here. But that's our second complaint is that the tax court rejected part of appellants argument on the ground that the allocation was inaccurate. But then when it issued its decision document which is just this one paragraph document that has the tax number in it. Tax liability number. It just relied on that allocation. And that is an overstatement of the tax liability. Even the government I think would agree that the tax liabilities overstated if the if the tax court was correct that the allocation. So the relief you're looking for on that with respect to that if assuming the government agrees and we do as well is it a remand. A remand right. And we argue that there's plenty of evidence in the record that would enable the tax court to make that determination under its rule 155 procedure. So if I could I'd like to get back to the first issue. Yeah. Right. Section 103 issue. And that arises from what happened after the parties agreed on although it's contemporaneous temporally but it's really what happened after the parties agreed on the 40 million dollar settlement of the just compensation. Pennsylvania did not have the money to write out a check for 40 million dollars at the time. So they went to the appellants and they said we'd like to agree to accept payment of this amount in installments. And and the appellants did agree to that. And so they drew up an installment agreement in which the payments will be made out over a five year period. And as with any kind of installment agreement there is an interest component to that payment in the end was for more than 40 million dollars because they got interest at a rate that was negotiated by the parties and put into the contract. And so the question is whether that installment interest is tax exempt under Section 103. Is this the interest beyond the 6 percent that I believe you agree you're responsible for? No. No. The 6 percent question goes to what we call the settlement interest which is the component of the 40 million dollars. The original 40 million dollar just compensation award that's has to be broken into two components. The principal fair market value and what we call the settlement. We're talking about the interest paid on the five installments. Right. We're talking only about the five installments on that first component. Did you agree to the 6 percent interest rate on those installments or some other rate? It was some other rate. OK. It's a rate that's provided in Pennsylvania law on tort judgments I believe it is and the statute. Is that 3.91 or something? No it's key to the prime rate. OK. It's key to the prime. Yeah that's the statute. OK. It's 238 Pennsylvania Rule 238. But it's key to the prime rate and actually that Pennsylvania rule says specifically that that interest rate does not apply to eminent domain proceedings. So it's important to recognize that. That it was a just a separate agreement. A different interest rate that the appellants would not have gotten if this was part of a condemnation proceeding. And that is I think the key point that these are really two separate things. The condemnation proceeding kind of ended with the agreement on the 40.9 million dollar. And then this was just a separate deal that was made a separate borrowing by the state in order to avoid having to pay up and one reason it's clearly different from the condemnation award the condemnation proceedings is what the settlement. Can you really separate the two? I mean can you really separate the two? I think it is as a result of a state condemnation action. I agree. It's as a result it flows out of the condemnation action. But I think you not only can you separate them but you have to separate them. Are you advocating for a rule that if in any condemnation case if it's paid off in installments then it fits under, it goes to your argument at 103? No. We're arguing for the rule that was stated by Justice Stewart in the Ninth Circuit case. The Stewart what was referred to as the Stewart 1 case. That's really the best decision to look at even though it's one actually where on the facts there the court held that the interest was not tax exempt. But Justice Stewart really went through all the decisions in this area and he tried to synthesize them and he stated what the rule was. And we think that's the correct rule. It was even really stated by the tax court. And I'm just going to quote what he said there because that is the rule we argue for. And that is when a government's obligation to pay interest arises from an agreement entered in connection with a condemnation proceeding. So he's talking about our case where it kind of flows out of a condemnation proceeding. Courts must determine whether the agency's obligation to pay interest arises by operation of law rather than as the result of voluntary bargaining. Doesn't the state have to pay? Isn't it obligated to give you fair and just compensation? It's obligated to pay fair and just compensation under the Fifth Amendment. And that's what it did in the settlement, the $40.9 million settlement. And that's why we don't dispute that the interest component of that $40 million is in fact taxable. There's no dispute about that. What we're disputing only is what arose later under the settlement. The appellants were not required to enter into this installment plan. This was just a voluntary deal between the parties. The appellants could have said pay us now. And again, the reason why they have to be separated, when you look at the original settlement agreement for the $40 million, the way that's being taxed now, and this is standard tax law, is that when you have a settlement of a litigation, you tax the amount received in the settlement as if it had kind of come out of the court proceeding. And that's why it has to be principle and interest. Because if the jury trial had continued to the end, there would have been a judgment by the court for, let's say, $40 million. It might have been a different number, obviously. And it would have had this principle component and this delay damages interest component. And so it gets taxed the same way. But that judicial finding would never have had anything to do with this installment plan. The court wouldn't have ordered payment on installments. They wouldn't have cared how the money was to be paid. They would have issued a judgment. And the state would have been So the state couldn't pay it immediately. They had to borrow money to pay it. They could have gone to a bank. They could have done various things to pay that judgment. But what they did, the simplest thing for them, was to go ask the appellants, will you agree to take it in installments? And we'll basically borrow money from you. You know, I understand your argument. But I was concerned. It seems to me that you got in this mess because the tax court really didn't like the approach you took and thought you were playing games. And that's why it didn't want to, you know, once it decided that you lost on your theory, didn't want to do anything else. And the question is, were they right in, do they have the right in conducting their hearings at some point saying, you know, you blew your chance to present this? Which is, I think, kind of what they did. Well, let me say two things about that. I mean, I disagree that we were playing fast and loose with the court, obviously. But the most important point, I think, up front is that all those comments only go to what I call the second issue, having to do with the treatment of the allocation and settlement interest. There's no, nothing like that on this installment issue that we've been talking about. I agree. It goes to the first, well, I call it the first problem. Right. Within the $40.9 million. Right. Within the $40.9 million. And the question is, did the court have a right to say, okay, your theory was really off the wall, and, you know, you didn't give an alternative theory that, you know, we can work with. Well, we think not, because basically the court is obligated to issue a decision that's in accordance with its findings. Now, if the court hadn't rejected our arguments on the ground that the allocation was inaccurate, then that would be true. Then we just wouldn't be able to come in and make this argument at this point. But we think once the court went ahead, and these principles come out of these Estoppel cases, I think, which the government cited in its brief, once the court went ahead and rejected the argument on the basis that the allocation was inaccurate, then the court was obligated to give us the benefit of that finding, at least, when it issued its decision. And courts commonly do that. A case that's not cited in the briefs, I think, but I'll just mention the Third Circuit, one of its more famous tax law decisions is the ACM case, which involved a tax shelter. And the court ruled, really, across the board against the taxpayer on all kinds of grounds. But at the end, it said there was one little item where the case was being sent back, because the taxpayer was entitled to a little bit of a credit. Given the way that the courts had rejected all of their arguments, that entitled them, at least, to something on another point. Can you tell us how this case fits within the purpose of Rule 103, the purpose being to allow a state entity to borrow at low interest rates? Yes. I mean, this is clearly a borrowing. I mean, Section 103 sets up this kind of dichotomy, or at least the judicial gloss on Section 103. Because I should point out that the language of Section 103 clearly supports opposition. It just says any interest on a state obligation is tax exempt. And what you have here is this judicial gloss, which has carved out an area where the interest is imposed by operation of law. And so there's no opportunity to bargain over the rate. That doesn't serve the purpose of tax exempt. Now, we clearly don't have that here. What we have here is a borrowing, and I don't think that the government even disputes that. Would it be any interest or reasonable interest? Well, I think it would be the interest that is paid and then gets reported as income by the taxpayer on its return. Whatever interest the state is paying? I think whatever interest the state agreed to pay. That would normally be a reasonable interest rate. I don't know why they would pay more. Section 103 really enables them to pay less than what others would be paying. Okay. All right. Maybe when you come back, you can touch on the Rule 155 issue. Okay. Good morning. May it please the Court. Randolph Hutter for the Commissioner. Good morning, Mr. Hutter. The tax court's opinion in this case boils down to one overarching determination, and that is that the taxpayers did not carry their burden of proving that the Commonwealth had paid them anything more than the just compensation they were entitled to for their condemned property. An installment agreement does not change that fact. If they're going to argue that there was an installment agreement, they needed to show that under the installment agreement, the Commonwealth paid them more than they were required to be paid as part of just compensation. Right. You know, there is a time value to money, or maybe I'm saying backwards, but it's deferred payment. I mean, isn't it reasonable to infer that there is an interest obligation with those installment payments? There is an interest obligation, and the Supreme Court has said it's consistently been held that just compensation entitles the property owner to receive interest from the date of the taking to the date of payment as part of his just compensation. The problem is you agreed on a certain date. It's like the case ended. The settlement agreement was like the end of the drive, same thing. That was the day you owed them the money on the taking, and that included the principal and the delayed payment. On that day, they had the right to say, pay us this minute. And you said, we don't want to pay you this minute. We essentially want to borrow the money from you. And, you know, so if you hadn't settled with them on that day, it would be a different case. But it was like the trial ended there. And you said, we're not going to pay you. We're going to borrow the money from you, in essence. That's what you did. Of course, we're the commissioner. We didn't enter into the agreement. I understand. I'm putting you in the shoes of the party. But the parties don't have a chance to arbitrarily end condemnation proceedings and by agreement determine that certain interest will be But following up, isn't it true that Pennsylvania said, we don't have $40 million. We cannot give it to you now. We're going to need time to pay off. And isn't it relatively common practice, probably, for legislators not to appoint, legislatures to appoint funds on an annual basis, and for that to be a rather typical scenario. And therefore, they get tax exempt interest. But it's borrowing then, isn't it? If you're doing it over time, isn't it really borrowing? But the burden was on the Commonwealth or the taxpayers here to prove that what they got was more than just compensation. They're entitled to just compensation under Supreme Court precedent until the day the condemnation proceedings are, the payments are completely finished. Why isn't the figure of $40 million just compensation? It may be just compensation. They had to prove that, they argued, actually, it was in excess of just compensation. But they haven't received it yet. They're still entitled to interest under just compensation law until they're fully paid. It just seems that, depending upon what the state's basis was for incurring the debt, and you want to make 103 not apply, it just seems that 103 always applies, no matter what the basis is on which the state acquires its debt. I completely agree. Their argument is that the reason the state is entering into the installment agreement should apply. Their argument is that Stuart 2 says that if a state needs credit, and that's why it's entered into an installment agreement, the interest under that agreement has to be tax exempt. We're saying no. The reasoning for the entering into the installment agreement doesn't enter into it at all. What the factor is is they have to prove then that under the installment agreement, the state gave them additional compensation for the extended payment. And if they did, then that part may well be subject to Section 103 and be tax-exempt interest. I think we would have to follow. I don't follow very much your contention. What if we call the $40 million settlement a loan? You say that the petitioner or plaintiff cannot deduct the interest payments from taxes. If we call it a loan, it's a $40 million settlement, but Pennsylvania cannot pay the $40 million. It needs to essentially borrow it and pay it in five installments. That's tax-exempt. Why isn't that what happened? You have not said that that is a condemnation proceeding. This was within a condemnation proceeding. No, but the condemnation proceeding is over. It's done. It's finished. It cannot finish until all the payments are made. That is our position. There is no precedent in the world. The Holley case in the Sixth Circuit says that you cannot buy an installment agreement even if the Commonwealth needs credit. The Holley decision says you cannot change that into a voluntary bargain just by entering into an installment agreement. That would be in conflict with the Sixth Circuit law. And just compensation goes until the amount is fully paid. But it seems to run counter to 103, which is designed to help state entities make their financial obligations at low interest rates and to pay over time. So why isn't this consistent with 103? Because it's in a condemnation proceeding. They can do that. They can enter into that agreement. Don't start the condemnation proceedings. Go to the property owner and say, this is what we're going to do, and we're going to pay over time. And if you do it this way, you get part of it as tax-exempt interest, and the But if they have to go all the way and to force the taxpayer to do this, then that's not within the spirit. So hereafter, taxpayers, when they settle, they have to insist an immediate payment of any settlement. So the Naples in this case would say to Pennsylvania, I want your $40 million or I'm not going to settle. No, Your Honor. They're still entitled to all the payment that they can get. Why shouldn't they pay tax on it? Why shouldn't this be taxable interest? Why should they just be able to tax exemptions are to be narrowly construed. That's Supreme Court law. Why should they just be able to sign a piece of paper and all of a sudden create tax-exempt interest when they have to be in these condemnation proceedings? If there wasn't a settlement agreement, if they had finished the proceeding and there was an award by the court that determined it and said, they owe you today $40 million. Okay, the books are closed. That's it. No more litigation. They owe it to you. And you're saying that even though the state didn't control that, it was a judicial finding, that a settlement agreement of that judgment, I mean, installment payments on that judgment would be taxable as interest? Yes, because under the Hawley decision and under Supreme Court. The Hawley decision was a little different from the Stewart case, right? Their full settlement amount hadn't been determined in the Hawley case, right? It's not like this case where the $40 million.9 was a set figure. I believe the Hawley case was where it had been fully determined and the Stewart case was where it had not been fully determined. I believe that's the case. And they said that the condemnation award was what was strung out over time. Maybe I can help you out a little bit. Let's take condemnation out of the equation for a moment. Let's say that Naples are a material supplier to the state of Pennsylvania, and I supply whatever trucks and maybe they're a big caterer, and the state of Pennsylvania says, we need this, but, look, we just can't pay you. And we're going to sign a $40 million contract, but we can't pay you all at the same time. And Naples says, okay, look, just pay me over time. Would that fall within 103? I think that that might be tax-exempt interest, yes. Okay. So the fact that it's a condemnation proceeding alone is what takes it out of 103? Changes quite a bit, yes. Absolutely, because now it doesn't mean that no tax-exempt interest in this transaction was possible. All they had to do was come into court and prove what was just compensation and what they received above just compensation, and we wouldn't have a leg to stand on to challenge that that part was tax-exempt. So if they had proven that $40 million was just compensation, then any interest on the installments would be deductible. Well, we're not arguing about any part of the $40.9 million. That's determined that part was fair market value for the property and part was interest. And then we're talking now about the installment interest. They didn't show. They're arguing that all of the installment interest over the five-year period should be tax-exempt because they entered into an installment agreement and that created a brand-new program. We're saying, and the tax court said, no, you had to prove, you had to carry your burden of proving that you got interest over that installment agreement above and beyond what you were entitled to as a matter of just compensation. If you do that, and that's all they had to do, then they were entitled to some tax-exempt interest. It's a burden-of-proof case. I don't get that. It just seems to me that they did that. They've done that. They've said, well, this is a settlement amount, and, oh, because of the way they originally argued it in tax court? No. Is that what you're arguing? No, Your Honor. They did not show what, under the law, they were required to pay for that period of the installment agreement. They didn't show what the interest rate was on the installments? No, they did not. Most importantly, they did not show what, under the law, they were required to pay as just compensation because the tax court meant that they should approve what was the excess over the just compensation, and they would get that part as tax-exempt interest. There were five installment payments, Mr. Hodder? I believe that's correct. And what was the amount of each one? Oh, it varied for each person. I think in total it was $5 million. I think that that is the correct amount for the installment interest. Okay. Was there an initial large payment by the State? No, there was not. How much was totally paid out of that $40 million settlement by the State of Pennsylvania? Well, in total they received somewhere around $46 or $47 million. They paid the 40.9 plus the 5%. Exactly. I don't know. It seems pretty obvious to me what the division was. I don't understand your saying it's not. So you're saying on each installment payment you're trying to split up by operation of law and what might fit under Section 103? Exactly. Exactly. They were entitled under the law, by operation of law, to interest on that amount until they were fully paid. They argued that they were entitled to tax-exempt status for all of that income, and the tax court said, no, you were entitled to tax-exempt portion to the extent you can prove that that interest was above what the Commonwealth was required to pay as a matter of law. They can deduct that. They can deduct it if this were not a condemnation proceeding. It would be beyond deductible. It would be tax-exempt. And if they had proven what rate of interest the Commonwealth should have paid as a matter of law, the excess over that would have been tax-exempt. So you're saying, okay, as a matter of proof, maybe they got more interest than the State was legally obligated to pay, and that's the only thing that's tax-exempt. And that would be a very small part of the $5 million. It might be half. I don't know. I don't know because they didn't put that number in. Has this ever come up before, I mean, this type of issue in a condemnation proceeding where a State needs time to make payment and the question of whether it's a 103 tax-exempt or not in any jurisdiction? Well, just dealing with the fact of an installment agreement alone, yes. There's the Holley case. There's the Drew case. And there's both of the Stewart cases, yes. So this has come up before. And the Holley case and the Drew case, in particular, say that an installment agreement alone does not change the nature of the payments and does not change the nature of the interest. It is still, under the installment agreement, just compensation, part of the just compensation that the property owners are entitled to under the law. Can I ask you, your adversary said they thought the government would agree that maybe the numbers weren't quite right. I mean, maybe you want to address what they brought up. Well, I would agree with the tax court that the interest rates that the tax court calculated were all over the place. The tax court found that some of the interest was paid with no particular attention paid to the amount of time that money wasn't spent and various factors, and it was paid at different rates. And, yes, I would certainly agree that their numbers really didn't show that, well, they simply weren't coherent. And one of the things that's telling is that the memorandum of intent to settle says that the division of the $40.9 million shall be 24 and 16 or whatever the parties allocate. Well, how are you going to determine from that? What really is the fair market value and what really is the interest? Do we need to remand it, though, to have the tax court take another look at these numbers, as your adversary suggests? If you do, your honor, number one, you're remanding it because of a mistake of the taxpayers, not of the tax court. They didn't carry their burden of proof. Number two, you're going to result in an entirely new trial. Is there not a clear mistake in this case? I think not. I think not at all, your honor. Did the tax court say that there is a mistake, but I'm not going to reopen the proceedings to correct it? Well, first of all, they haven't raised that issue. They're not talking about the issue of the allocation of the $40.9 million on appeal at all. They're only talking about installment interest. Therefore, that allocation is not relevant. That allocation comes into relevance in the Rule 155 issue where they say, You said the allocation of interest was too high. You should enter a different decision to reflect that. And they could have argued that from the beginning. They knew the allocation was crazy. They said so in their brief. So are you saying that below they never asked the tax court to do something different? That's true. They could have argued this differently. They could have said these are the real numbers, but they didn't. They made a choice, and the tax court is completely correct in saying that they can't argue that there's loss of interest to begin with. And when they lose on that issue, now they can argue, oh, well, what we meant was there's lots of principle and just a little bit of interest. That's not in the interest of justice, exactly as Judge Nim said. Very good, Mr. Hutter. Thank you very much. Thank you. Mr. Horowitz, two minutes rebuttal. Could we just start with that 155 business because that's what concerned me. Did you do what you were required to do to get the tax court to do the recalculation? Well, we believe that we did. What did you do? Well, we argued that 6% was the right number, and nobody disputed that. So we didn't have any basis for thinking that the tax court was going to say that the allocation or that there needed to be proof of a commercial loan rate. So it's true that we did not put in evidence of commercial loan rate, but that could be taken care of in the Rule 155 proceeding if that's what the tax court desires without the introduction of new evidence because you can just determine it from prime rate information that the court can take judicial notice of. So we think there's no need. You said to the tax court, okay, the $16 million isn't right, but figure it out based on as if it were a 6% rate. Yes. You still need testimony to determine whether it should be 1% over prime, 2% over prime, 3% over prime. Yeah, and as we pointed out in the brief, if that's the conclusion, then the law suggests that the court has the power to hold the taxpayer sort of to resolve that ambiguity against the taxpayer and go to the higher end of it under the Cohan case, which has been applied many times by this court. But it's not supposed to just say, I'm throwing the whole thing out, and I know you're entitled to something, and I'm not sure whether it's here or here. It can apply to the Cohan case, so that's what we suggested. On the installment issue, installment interest issue, I just want to emphasize that Mr. Hunter Could you answer one question? Mr. Hunter says, look, the big difference in this case, it's condemnation. If it weren't condemnation, I think you would be fine. Yes. Yes. That seems to be their position, that once a condemnation proceeding starts, it's like quicksand and you can never get out of it. And that's not the case. The condemnation proceeding was over, and this is just a separate deal. And it doesn't matter. He talked about a loophole entering into the settlement agreement. It doesn't matter whether it was settled or whether it was decided by the jury. Is that really true? I mean, on a condemnation case, isn't it by operation of law that interest needs to be paid until the judgment's satisfied or, you know, just compensation is paid? Yes. I think the government has lost sight of the reason why that rule applies. In the condemnation proceeding, the payment is required by the just compensation clause, and that's by operation of law. And so the interest rate is determined by law, and there's no room to negotiate over it. But that's not what we had here. The condemnation proceeding ended. Whatever rights we had under the just compensation clause were now superseded by the contract. We couldn't have gone back to the court afterwards and said, gee, we're sorry. We didn't get enough installment interest. We weren't entitled to more under the Fifth Amendment. That was given up when we entered into this contract, which the state asked for, by the way. And so there is no operation of law anymore with respect to that installment interest that we're arguing about. What law are they talking about? The Fifth Amendment? The Fifth Amendment doesn't allow for compound interest. It goes for different rates than what was put in the contract. Here we got compound interest under the contract, and there was a different rate. So there is no law that is operating there. The interest is just, you know, at the basis of this voluntary agreement between the parties. Is this a sui generis type of case? I mean, is this one of a kind? Well, no. There aren't that many cases. I asked Mr. Hider if there were any other examples of this type of own case structure. The Stewart II case is identical to this case, except for one detail, which the court there found as irrelevant and the government argued as irrelevant, and that is the question whether a condemnation proceeding had actually begun or whether the payment was made under threat of condemnation. Rather than going to court, they just reached an agreement. All the courts that have looked at this, the Stewart case, the Drew case, the King case, have all said that that's the same case. Yeah, but to Judge Fuentes' question, I mean, I'm looking at the dates on these cases, 1937, 1932, 1983, 1984, and Holly's 1942. I guess this doesn't happen too much. It doesn't happen too much, but the Stewart cases are from the 80s, I believe. And as I said, retired Justice Stewart really synthesized what the law was there, and he harmonized all the cases, and we think that's the correct way to look at it. The Holly case is different because it all, the agreement was before the award, before the condemnation proceeding had happened, so it was all built into the court's order there, and so it was required by operation of law, and my time is way over. Yes, it is. Thank you, Mr. Horowitz, very much. Thank you. Very good arguments. We'll have to take the case under advisement. Thank you very much, Mr. Horowitz.